808 P.2d 429

STATE of Idaho, Plaintiff–Respondent,

v.

Susan Kaye YOUNG,
Defendant–Appellant.

No. 18750.

Court of Appeals of Idaho.

March 26, 1991.

G. LaMarr Kofoed, Fruitland, for defendant-appellant.

Jim Jones, Atty. Gen. and James E. Leuenberger, Deputy Atty. Gen., argued, Boise, for respondent.

WALTERS, Chief Judge.

Susan Kaye Young was arrested and charged with lewd conduct with a minor under the age of sixteen. She pled guilty. After a hearing, the district court sentenced her to a term of twelve-years incarceration, with a minimum period of confinement of two and one-half years. Young moved the court under I.C.R. 35 to reduce her sentence to probation with counseling and treatment. Her motion was denied. Young appeals, arguing that the district court erred when it denied her motion. We affirm the denial of Young's motion and her sentence.

### Standard of Review

A motion to reduce a sentence under I.C.R. 35 is essentially a plea for leniency, addressed to the sound discretion of the sentencing court. *State v. Allbee*, 115 Idaho 845, 771 P.2d 66 (Ct.App.1989). This Court will not disturb the sentencing court's decision regarding a request to reduce a sentence unless an abuse of discretion is shown. *Id.* On appeal, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *Id.*

A sentence is reasonable if it appears to accomplish the objective of protecting the good order of society and is imposed to achieve any or all of the related goals of deterrence, rehabilitation or retribution. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). A sentence of confinement that is longer than necessary to serve these goals is unreasonable. *Id.* When evaluating a sentence imposed under the Unified Sentencing Act, I.C. § 19–2513, the minimum fixed period generally will be treated as the probable measure of confinement for the purpose of sentence review. *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). We note that a sentence fixed within the limits prescribed by statute ordinarily will not be considered an abuse of discretion. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). The maximum sentence for lewd conduct with a minor under the age of sixteen is life. Young's sentence does not exceed that maximum. However, when a sentence is questioned on appeal, we will examine the circumstances of each case to determine whether the punishment imposed is reasonable or excessive. *State v. Shideler*, 103 Idaho 593, 651 P.2d 527 (1982). When reviewing a sentence, we examine the facts in the record independently and focus on the nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

### Facts

Young's conviction and sentence are products of a body painting episode she had with her thirteen-year-old son. According to Young, she wanted to teach her son about the parts of the female body so that he would not grow up with the same "misconceptions" and "misinformation" about the female body that she had lived with. She discussed the activity with her husband and together they planned the activity. During the episode, Young sat naked on her bed with her clothed son on one side of her and her husband, who was wearing a robe, on the other. The two males spread body paint over Young's body. At different times the son was persuaded to touch Young's breast and vagina, and to insert his fingers into her vagina. After they were finished the males gave Young a sponge bath.

Young stated that she was not aware that she had done anything wrong and that she would have stopped if her son had said he was uncomfortable. She also said that she intended the episode to be educational, not molestation.

### Discussion

Young asserts several factors she says weigh in favor of reducing her sentence, but which, allegedly, the district court did not properly consider. These factors are that Young, who was 31 when she was arrested, had never before been in trouble with the law. When arrested, she

cooperated fully with the authorities. She has always worked, provided for her children, and tried to contribute to society. She claims that she was sexually abused when she was eleven and thirteen years old, and that thereafter she abused alcohol and other substances until she turned nineteen, when she joined Alcoholics Anonymous. She has been a substance abuse counselor for several years. Further, she has expressed remorse for her act, has vowed not to repeat it, and seeks treatment.

All of this information was presented to the court when it pronounced its sentence and later when it denied Young's motion to reduce. Unfortunately, so was countervailing negative information. The presentence investigation report includes information that Young and her husband had previously watched sexually explicit movies with their minor children, that they had made home movies in which they engaged in sexual acts, and then had shown the movies to at least the son. Also, there is evidence to suggest that the parents had engaged in sexual acts in front of their children after encouraging them to watch. The report states that Young and her husband were openly nude in front of their children, and that the son had been made the brunt of sexual jokes concerning his looks and future sexual performance.

Young stated that she and her husband were "open" about nudity and sex with the children because they did not want the children to be ignorant or ashamed of the human body or sex. It is not necessary for this Court to conclude whether Young's openness was truly meant to be instructive or whether it was a guise for more prurient desires. Also, we are mindful that it is not the province of the judiciary to regulate lifestyles when they do not involve criminal activity. However, in this case, Young's body painting exercise fell into the criminal area and produced the charge of lewd conduct with her son, to which she pled guilty. It was within the district court's discretion to consider any facts that would place Young's crime in context and to weigh those facts in sentencing. Considering the above information, the court seemed to treat the charged episode as the apogee of a generally sexually abusive atmosphere in Young's home. Looking at the same information, we cannot disagree.

The presentence investigation report also included the report of Dr. Mowry, Clinical Psychologist. After evaluating Young, Dr. Mowry found that she may be an appropriate candidate for a sexual abuse treatment program. However, he said his conclusion was "guarded" because Young had been a substance abuse counselor and he felt that she already knew enough about the sexual abuse treatment program that it might not teach her much that would be new to her. Moreover, he expressed concern that the knowledge Young gained as a substance abuse counselor would allow her to progress prematurely through a treatment program because she would "know what to say." Dr. Mowry recommended a period of incarceration before treatment was provided. The presentence investigator also recommended incarceration.

The court referred to Young's activities as a substance abuse counselor in its order denying her motion to reduce her sentence. As a counselor she had encouraged the people she was counseling to speak about any sexual abuse that they might have suffered in the past. The court expressed concern about whether Young's inquiries were for her personal gratification or whether she felt that previous sexual abuse could have been part of her charges' present substance abuse problems. The court stated that

"[w]hatever her motives, the defendant had to become aware of the vast damage that is caused to victims of sexual abuse. Being privity [sic] to that knowledge, it is inconceivable that the defendant could consciously enter into a course of abuse directed toward her own son. Moreover, the psychologist who examined the defendant felt, and the court agrees, that treatment at this time would be "risk" [sic]. The psychologist felt that there was very little that the defendant would learn from a treatment program that she doesn't already know from her background as a counselor. The defendant's conduct requires incarceration as a means of punishment and as a deterrence to others. The court believes that a peri-

od of incarceration might also help in any subsequent treatment programs."

The above observations indicate that the court considered the sentencing goals of punishment and deterrence when it sentenced Young. The court also stated in its original sentencing proceeding that it "must impose that sentence that will accomplish the goals of sentencing. In this case, I think the goals of sentencing are to let ... you know and let society know that this type of conduct with children is—will not be tolerated. We're not going to hurt our children." The court also stated that a lesser sentence would depreciate the seriousness of Young's crime and that a period of incarceration would provide an "appropriate punishment and a deterrent to [Young] and ... to others in the community." Further, the court refused to grant probation because it found that there would be "an undue risk during the period of suspended sentence of probation that the Defendant will commit another crime."

### Conclusion

When the court imposed its sentence, it rejected the prosecution's request that Young be incarcerated for a minimum period of ten years, plus an eight-year indeterminate period, because Young showed no evidence of being a "predator." Instead, the court imposed a lesser sentence which it thought more appropriately fit the crime. We cannot disagree with the court's reasoning and we cannot say that it abused its discretion when it sentenced Young. The record reveals that the court properly considered many conflicting facts when it imposed a sentence that addressed the appropriate sentencing goals and appears to be reasonable in light of the facts of this case. Consequently, we affirm the order denying Young's motion to reduce her sentence.

SWANSTROM and SILAK, JJ., concur.

SWANSTROM, Judge, specially concurring.

I concur in the foregoing opinion, but would add an additional observation.

The twelve-year sentence pronounced here would be unreasonable if it required that Young be incarcerated for twelve years or even six years solely because of the crime committed. If, however, the sentence is administered the way unified sentences are intended, the sentence is reasonable.

Assuming that Young has genuine contrition, shows her ability to avoid the mistakes of the past, and conducts herself appropriately in prison, she should be entitled to parole at the end of the minimum term of the sentence. The indeterminate part of the sentence, nine and one-half years, then becomes a reasonable "control" period during which Young can be released on parole with appropriate supervision. This is the primary value of such a sentence. It recognizes the potential for rehabilitation by affording Young a second chance after an appropriate period of incarceration. It provides continuing motivation for good conduct and it gives society a reasonable level of protection while Young is integrated back into society. I believe this is what the district judge intended when pronouncing this sentence. Otherwise, what is the purpose of a judge setting a minimum period of confinement, as he is required to do under the Unified Sentencing Act?

The sentencing judge and the reviewing appellate court should be able to presume that the minimum sentence fixed by the judge as appropriate for the case will not be enhanced arbitrarily by prison authorities because the crime falls within a certain class of crimes. To do so will obscure the "truth in sentencing" which underlies the Unified Sentencing Act. On the other hand, I clearly recognize the unique discretion of the Commission of Pardons and Parole to determine, on an individual basis, when a prisoner may safely be released on parole. I.C. § 20–223. Because we must presume—until shown otherwise—that the Commission of Pardons and Parole is administering unified sentences as intended in the Act, I view the sentence in this case as reasonable.

SILAK, J., concurs.